May it please the Court, Aletta Brenner for the Appellate Plaintiffs. Today at over 200 government-funded universities across the United States, LGBTQ students can be sexually harassed, expelled, denied admission or otherwise discriminated against without recourse. Okay, counsel, let me just say this to you. Giving full dignity to the underlying comments that you just made, as a court, we have to look at the pleadings that you put forward to the district court, and I guess I would start with the fact that the Kennedy case, of which I'm personally well familiar, was decided six months before the court actually ruled in your case, and the court there made clear that Lemon v. Kurtzman was gone and the history and tradition test took over. I don't see in your argument anything trying to substantiate your claim on this part of the case on the history and tradition. Did I miss something, or you just decided not to do that, or what happened? So on the Establishment Clause claim that the plaintiffs brought, you're absolutely right. Kennedy was decided many months after the motions to dismiss that the defendants had filed had been fully briefed. I'm sorry. After? No, Kennedy was decided before the judge ruled, all right? Six months before. True. However, the defendants had filed motions to dismiss. Those motions were fully briefed. It was about seven months later, after that had all been submitted to the court, that the Kennedy decision came down. And within a couple days, there was a notice of supplemental authority that was provided to the district court. The district court did not rule then until another six months after that, and at that point applied the Lemon test and did not acknowledge Kennedy. Ms. Brenner, in that supplemental authority exchange, did you not say, yeah, well, an argument will be forthcoming? Why did you never make the argument? So the notice of supplemental authority was filed a couple days after the decision came down. It was filed by some of the defendant intervenors. At that point, there was some suggestion, perhaps, that the court would like additional briefing, but the court never requested it. And because the defendants did not rebrief their motions, the plaintiffs did not rebrief a response. So, counsel, I'm looking at SCR 11 with a document entitled Plaintiff's Supplemental Brief of Newly Discovered Facts, and it says, Intervenor defendants recently filed notice of supplemental authorities regarding Kennedy, footnote 7. Plaintiffs will more fully respond to intervenor defendants' arguments in a separate filing. Am I correct that that's what the pleading I just read says? That's correct. And am I correct that there never was any such supplemental pleading that responded to intervenor defendants' arguments? No, the court did not request any further briefing. But you said you're going to do it, and you didn't do it, right? The parties decided not to plead, not to file any supplemental briefing without leave of the court. Even though the other side had flagged the issue? The other side had flagged the issue, and the court had discretion as to whether or not to request supplemental briefings from the parties. The plaintiffs suggested that they were willing to provide such briefing, but it was never requested. Okay. That's a most interesting position. So you felt that even though the other side had flagged it, the law had changed. Even though the district judge was wrong in continuing with Lemmon, you decided not to brief the history and tradition concept, even though that was the law at that point. Is that right? So at that point in time, there had been multiple supplemental notices of authority and additional facts that had been provided to the district court, and the district court had provided some feedback that she was, excuse me, that the district court was growing tired with all of the additional supplemental filings. And at that point in time, the plaintiffs felt that they wanted to allow the court to let the parties know if, in fact, the court wanted further briefing on the issue. Ms. Brett, I guess, where would, if the panel were to reach the Establishment Clause claim, where should we look for the plaintiff's best argument as to why the Title IX exemption violates the Establishment Clause? So there's a couple different areas where the, at least at the pleading stage, the plaintiffs have suggested issues with the exemption as it's been applied to them where it could violate the Establishment Clause. So one of these issues is the way that it privileges religion over secular, you know, religious institutions over secular institutions in a way that allows them to obtain a federal benefit in the form of funding without the strings attached that apply to secular institutions. Is Amos, which relied on the Lemon test, still good law after Kennedy? So Amos, I think it's questionable whether it's still good law in light of the Kennedy decision because it did rely on that. But furthermore, I don't think that the Amos case is very helpful here because Amos concerned that religious exemption in Title VII, which is structured very differently from the religious exemption in Title IX, both in terms of its scope and the way it operates and also in the way that it's neutral as to religious doctrine. And furthermore, Amos, you know, being a Title VII exemption is not in the context of any kind of federal funding. And the important thing to note here is that a lot of these cases that have applied historical practices and understandings type analysis in the context of a religious exemption are cases that are looking at types of exemptions that apply to general law. So, for example, the military selective service context, and not to a situation where you're talking about the Spending Clause, where there's Federal money that's going to be used to pay for military service, that's not in the context of any kind of   And can I back up? You'd mentioned that it's neutral with respect to religious doctrine, the Title VII exemption. Isn't, I mean, that involved a preference for co-religionists, which, is that not a question of doctrine that some religions may have preferences for co-religionists in those positions, some may not? It's certainly, it's certainly, there's a preference there in that it's allowing exemption in that situation, but it's not inquiring into the doctrine of these So, I'm sorry, please finish your answer. It's not inquiring into the doctrine of any individual religious group as to whether or not the exemption applies, whereas the Title IX exemption, by its own terms, hinges on the question of whether or not the application of Title IX would be inconsistent with the tenets of the religious organization that controls the school. So, Counsel, you say at page 47 of the Blue Brief, the exemption is inconsistent with the historical understanding of the Establishment Clause because it discriminates between religious sects and is available only to some religious groups, those whose tenets are inconsistent with an application of Title IX. Let me give you a hypothetical. Government, state, federal government, has a rule that in a particular agency, everybody has to be available to work every day, but then they have an exception that says, but if for a particular individual, their religious beliefs would not allow them to work on a particular day of the week, government shall take that into account. That seems to me to be forbidden by the, in your view, by the statement on the top of page 47 of your brief that quoted that, you know, you can't make it only available to those whose religious tenets have a problem with it. So, I think that there's two issues there. One issue is whether or not allowing the exemption is turning on the specific doctrine of the individual. And then the second question is whether in applying the exemption, it requires the government to go into some sort of inquiry into what that doctrine is. In these types of cases where there's been, for example, unemployment benefits have been at issue, the context of that is very different because it's a general kind of benefit that is open to everyone, and then there's been exemptions that have been offered for specific. So are you backing off the breadth of the statement that I read that it violates the historical understanding because it is available only to some religious groups because of their tenets? I think that I'm not backing off that statement at a very high level, but I think that what Kennedy tells us is that in order to really engage in the historical practices and understandings analysis, you really do need to kind of get down into the weeds of the particular type of exemption at issue, the context of that, both historically and the context of how it's being applied in the present day, because that context and the facts matter, and how that exemption is actually going to hit the ground and whether it, in fact, in practice, raises an Establishment Clause issue. And the problem here is that because the district court did not engage in any Kennedy analysis at all, we don't really have anything there to look at. And because it wasn't developed by the parties below, we don't really have the record where we can dig into that. The plaintiffs would be happy to do that if this case was remanded to the district court so that they could do that historical research and also look at their claim and potentially re-plead. You could have done it in your briefs if you'd wanted to, correct? I think that at this point, yes, there could have been some discussion of the law in the briefs, but I think it goes deeper than that because, remember, in fact, unlike Kennedy, which was decided on a motion for summary judgment, this was happening at the pleading stage when there was very little of the facts in this case actually developed. There had been a limited amount of discovery for purposes of a preliminary injunction that the plaintiffs had filed, but there had not been discovery and really a full development of the facts, which is what I think you would need if you were going to really engage with this type of test. Let me ask you this, counsel. We've talked a little bit about the timing of Kennedy and when the ruling came down. If the court was of the opinion that you were fully informed that the law required the history and tradition analysis and you didn't do it, would that be the basis for a waiver of your Establishment Clause claim? So on the issue of waiver, I think it would be a waiver if the plaintiffs had been the one who introduced the error here, but in this case— I'm not talking about invited error. I'm talking about waiver where, you know, you had to present something to preserve it and you didn't do that. So let's follow that. I'm not talking about invited error. I don't think that's here in this case, but tell me about the waiver aspect. Why isn't this a waiver of the Establishment Clause aspect? So the defendants are the ones that had brought their motion and they argued, you know, under whatever law they were going to argue, right? The court was actually aware of what the correct law was after Kennedy had been decided, and the court had an obligation to apply the correct law. So it's hard for me to see how the plaintiffs can be faulted and say that they waived arguments, you know, anticipating arguments that weren't actually made by the other side either. So is it your position that there's no waiver, but we can go ahead and decide the case based upon the law as it is post-Kennedy? Is that correct? I don't think that we can decide the case based on the law post-Kennedy right here at the appellate level because I don't think we have enough of a record to see how this actual historical practices and understandings, A, what they were in the context of a spending clause exemption like the one, because none of the cases that we have that we can look to have that sort of situation. And second of all, we don't have sufficient facts to really understand how this exemption is applying to these students on the ground because, A, given the state of, you know, the pleadings that it was on. And whose fault is that? I'm sorry? Whose fault is that? You're the plaintiffs. You have the burden. You knew what the law was. You didn't present that evidence. Is that the fault of the government? Is that the fault of the plaintiffs? Whose fault is it? Well, I mean, again, this was decided on a motion to dismiss, and plaintiffs had asked for an opportunity to replead, to potentially add new facts and develop the case in order to address both that and any of the other deficiencies. After the ruling you did. What was that? After the district court's ruling you did, right? Well, there was actually a motion to amend that had been previously made that was not actually directed at changing anything substantively. But then as also part of responding to the motions to dismiss, the plaintiffs would have liked to have leave to amend, which the court acknowledged, and then denied leave to amend, not because there was prejudice. In fact, she found there was no prejudice, and not because they had many bites at the apple. They'd only, you know, amended once as a matter of course before response to pleading. She denied leave to amend purely on futility of grounds. And, you know, that also gets into the equal protection and APA claim. Let me, as I said, we've got lots to cover here. Let me ask you this. You've alleged animus and discriminatory intent against LGBTQ plus people. But when Title IX was adopted, is there any argument you can make that that was understood, that someday the Title IX would cover LGBTQ people? Did anybody say that in Congress? I think that we can look at the history at the time, and we can also look at, you know, the reasoning and discussion even in the Bostock opinion. And we know that, you know, a plain reading of the text in Title IX, just like in Title VII, does suggest that, you know, that sexual orientation and gender identity are things that would be encompassed within that. But the important thing to remember here is that the plaintiffs— Respectfully, my understanding of your allegation is that they knew, and they intentionally discriminated. I get your point of, you know, a la Justice Gorsuch and textualism. I get that point. What I don't understand is how you can say that when Title IX was passed that there was any thought in the Congress that someday this was going to cover LGBTQ people. What's to the contrary? I think that there's historical facts in that context to look to, but I also think it's kind of neither here nor there because the plaintiffs have alleged an as-applied challenge as the Department has applied Title IX exemption to them over the years. And there's a lot more different facts that flow all the way up to the present day. As against the Department's application of law rather than the nature of the law as adopted. Is that your claim? Right. The gravamen of their claim is really focusing on the Department's conduct over the years, and that flows all the way through even to their— So you're not arguing that there was any animus toward your clients, toward the group that your clients are in, that motivated the passage of the exemption? I wouldn't say that. I think— Well, I thought you just did say— I thought you did say that. So— I think— Yes, so, sorry. No, I mean, I think your abandoning that gives you a little bit of a legal problem, but if you're not abandoning it, then I'd ask you respectfully to answer Judge Smith's question, what is even the slightest indication that that animus may have motivated the Congress or the executive in passing or signing the bill? So, what I would say is that, you know, in 1972, at the time that this was going on, there was widespread discriminatory views against LGBTQ people. I think we can all recognize that, right? But that's not the question. That was the environment. And what plaintiffs have alleged is that at that time, Congress was simply not concerned about protecting them, and so they were fine putting this big exemption in the law that they knew would negatively and specifically impact LGBTQ. Take your point. There was discrimination, no question. Where's the evidence that shows that the members of Congress intentionally discriminated against LGBTQ people when it passed Title IX? So, what I would say is that plaintiff's claim doesn't hinge on that for two reasons. The first is that you don't have to have legislators personally hold animus for something to be an intentional discrimination claim. Can you impute it? If they, well, if they're responding to interest groups that are expressing animus that they are trying to placate, for example. And where's that in the pleadings? And so, these are facts that are not well developed in the pleadings, I will tell you that. And that is why the plaintiffs wanted an opportunity to amend. But these wouldn't be new. I mean, this is a law passed in 1972. Why couldn't those have been established in your complaint? So, the plaintiffs allege that there was an environment of intense discrimination against LGBTQ people at the time and that Congress was looking to placate religious universities that were unhappy, for example, about Title VI, which had no religious exemption in it, and looked at Title IX and were concerned about the impact for them and did not want to be affected by it. I guess to turn more broadly to the equal protection issue, what's the classification that you urge here? I'm trying to figure out the relationship of the sex-based or gender-based classification and the religion-based classification. Why is it not just a religion-based classification? And I'll just note that I've got two minutes left. Why don't you answer his question first? Yeah, I'm happy to answer your question. So, the plaintiffs take the position that this is sex-based discrimination, that intermediate scrutiny should apply. However, because there is an intentional discrimination issue here, and again, this goes not just to Congress, but their primary focus is on the Department and its conduct over the years, that because of that, there is a heightened scrutiny that applies here either way. And so, because of that, they have and can state a claim based on the Department's policies, even through rulemaking and through, the issues like with their APDA claim and the lack of notice, those types of things, you can draw an inference of discrimination and intent on the part of the Department. And that is really the gravamen of their claim here from an equal protection standpoint. Okay. Why don't you save the balance of your time? Thank you. Now, on the appellee side, we've got three different lawyers. As I understand it, Ms. Autold? Is that correct? Okay, you have 10 minutes. Then, Mr. Shondaville has five minutes, and Mr. Scherer has five minutes. Is that right? Okay. And I'll hold you to those times. So, keep that in mind. Please proceed, then. Good morning, and may it please the Court. Ashley Honnold for the United States. As the Court noted, plaintiffs have not met their burden to show animus. The government does not dispute that LGBTQ individuals have faced and continue to face discrimination, and the government does not condone discriminatory acts. But under binding Supreme Court precedent, that historic discrimination does not trigger intermediate scrutiny. Ms. Honnold, can I ask you a question about the operation of this exemption? It appears to operate kind of at the wholesale level, so that if, if a school claims the exemption because any aspect of the imposition of Title IX would violate any of its religious tenets, it gets a blanket exemption. Is that right? No, Your Honor. The exemption does not operate as a blanket exemption. Instead, it only applies to the extent that a particular application of Title IX would conflict with a specific tenet of the controlling religious organization. And I'd like to give an example that I think will help illustrate this. So, for example, a school might obtain a religious exemption for, say, a student policy that prohibits same-sex relationships between students. And even if the school were to obtain a religious exemption as to that student policy, it does not mean that the school is free to, let's say, permit physical harassment of LGBTQ students or assaults, physical assaults, or to fail to address complaints of harassment. So those things would still be prohibited under Title IX. Where should we look for that? Because that doesn't seem to be obvious from the text of the exemption. What's the authority for that application? I think it is, it is apparent from the text of the statute itself. So if we look at the text of Title IX, it says that you have to look at whether an application of this subsection, so that's where it's a particular application of Title IX, would not, and then the text says, would not be consistent with the religious tenets of such organizations. So that's where you have to look. But then it says this section shall not apply. That's the condition to get the exemption. But then the consequence of the exemption is that the section shall not apply. Am I misreading that? Right. The problem, as you've indicated, is that a school may seek a religious exemption to maintain same-gender bathrooms or same-gender residential arrangements. I guess I'm just trying to, if you can point out to me where beyond the text of the statute it's made clear that in that instance the exemption from Title IX doesn't also then immunize gender-based violence or other things that are also subject to Title IX that would not conflict with the religious tenets of the school. So I think if we look at the history of the department's application of the Title IX religious exemption and how it's addressed complaints, I think that gives some clarity as to the tailoring of the religious exemption and how it's not just a blanket exemption. And just to look at this case in particular, the department does take seriously the allegations and plaintiff's complaints. And some of those investigations do remain open. The department has not granted blanket religious exemptions and simply dismissed all of those complaints. Let me just ask you a follow-up on that aspect of it. My understanding is that the department doesn't even require a preclearance, basically. People can raise the religious exemption almost any time. My understanding is also that there's no examination by the department of the religious tenet, if you will, on which an organization relies. Is that correct? Your Honor— In order to qualify for the exemption. Sure. To the extent that Your Honor is asking whether the department takes the religious school's word as to what the religious tenets are and whether there's a conflict with a particular application of Title IX, that's correct. But that does not suggest that the department does not actually scrutinize or apply the exemption with any tailoring. The department actually does some work. It looks at whether the religious exemption would apply to whatever the complaint of discrimination is. Does it look to see whether the institution or organization is controlled by a religious organization? Yes, Your Honor, that is a requirement of Title IX, and that's not challenged in this  But I guess the — I believe the plaintiffs have highlighted some areas where some of the schools where the students have — some of the schools where the students have been enrolled that have received exemptions do not appear to be controlled by a religious organization, or at least there's not any — is there guidance that would tell us one way or the other whether they're controlled by a religious organization? Your Honor, I don't believe that has been raised on appeal, so I'm not sure of the answer to that. Let me ask you — sorry, go ahead. So I want to go back to your initial discussion of animus. So in the government's brief at 14, it says basically for 40 years no one suggested that Title IX applied to sexual or gender minorities, so there couldn't have been the type of animus that would be required for plaintiff to make out the claim they're advancing. Am I interpreting your brief correctly? Yes, Your Honor. Okay. And that is, I take it, still the government's position that if there is no evidence that the time of passage and from — up from whatever, 72 to 2010, that anybody even considered this as applying to sexual or gender minorities, then there cannot be the type of animus required for plaintiff to make out the claim they're advancing. I think that's right, Your Honor. And the Supreme Court explained under Bostock that it does not matter for purposes of what's prohibited under Title IX. We have to look at the plain text of the statute. And the Supreme Court explained in Bostock that prohibiting discrimination based on sex does also include discrimination based on gender identity and sexual orientation. But in terms of whether or not Congress in 1972 was trying to discriminate against LGBTQ individuals, that's simply not the case because they didn't have this particular population in mind. But more importantly, regardless of the level of scrutiny that is applied here, I think this Court could just assume that intermediate scrutiny applies, like the district court did, because it's clear that the government would still prevail under intermediate scrutiny. The religious exemption is substantially related to the government's important interest in accommodating religion and avoiding government entanglement in religion. Let me ask you this. The counsel's changing the subject a little bit. You have argued that the failure of the district court to apply, to continue to rely on the Lemon Test was the fault of the plaintiffs. But my reading of the record suggests that the plaintiffs weren't the ones who introduced that. That was the government. So if we reject the concept of invited error, as you have requested that we do, what's your position about the waiver argument that the other appellees have raised? Your Honor, the government is not arguing that plaintiffs have waived or forfeited their Establishment Clause claim. You're saying you're not arguing waiver? We are not arguing waiver or forfeiture. Rather, we are pointing out that it would be somewhat anomalous for this Court to conclude that the district court committed reversible error when the Court addressed the arguments that were presented by the plaintiffs. So you want us to decide the merits of the case, not based on any waiver or invite error. Is that correct? Not quite, Your Honor. The government is not arguing that plaintiffs waived or forfeited their Establishment Clause claim. But the government does think it would be proper for this Court to say that because plaintiffs did not raise these arguments before the district court, that they cannot present these arguments on the first time on appeal. It's strange for plaintiffs to be able to say, we'll try the Lemon test in district court, we'll wait to see if we win, and then after we lose on the Lemon test, we'll advance the historic analysis test later. So what do we do? Kennedy made clear, I think Justice Gorsuch said that Lemon was long gone, but certainly by Kennedy, it was gone. That had happened before the Court actually ruled in the case. You say that there's no invited error, you say there's no waiver, then how do we decide it? Do we just decide it based on it's totally a legal issue? Do we have to send it back to the trial court for new pleadings, new development of the record? What do we do from the government's perspective? I think the Court could either affirm because on the invited error doctrine, or the Court could apply Kennedy as a legal analysis and decide the case. So the district court relied on Lemon, which is wrong. Can we just say the district court got it wrong, but when you apply Kennedy, the plaintiffs lose on the establishment clause claim? Is that your position? Yes, Your Honor. This Court has case law saying that the Court may affirm based on any basis in the record. And I think it's clear here that there is a long history of this Court and the Supreme Court upholding religious exemptions similar to the one at issue here. I think one of the arguments the government made in its brief is that plaintiffs haven't offered any reason to suggest that the Amos case, for example, would have come out any differently under Kennedy than it did under Lemon. Yes, exactly, Your Honor. The Court explained in Amos that it has long held, looking back, that the government may and sometimes must accommodate religion, and that it may do so without violating the establishment clause. So there's no reason to think that Amos would have come out differently after Kennedy. Okay. Your time is up. Let me ask, do either of my colleagues have additional questions for the government? Okay. Thank you very much. Thank you, Your Honor. So now we're going to hear from Mr. Is it Chandeville? I want to pronounce it correctly. Is that correct? Chandeville. Okay, Chandeville. Okay, very well. Please. Yes, Your Honor. Thank you, Your Honors. Good morning, and may it please the Court. Chris Chandeville with Alliance Defending Freedom on behalf of Religious Schools, Corbin University, William Jessup University, and Phoenix Seminary. In this lawsuit, the plaintiff's students are seeking to force private religious colleges and universities across the country to choose between either violating their sincerely held religious beliefs or else risk having to close their doors completely and permanently. Chandeville, I wonder if we could start where we just left off with the government. Yes, Your Honor. Phil, the overruling of Lemon is one of the more famous or infamous death-by-a-thousand cuts of anything in the Court. And so I guess our problem is, is that we have these somewhat formalistic tools to deal with forfeiture waiver, whether arguments have been made or not. And we also don't have a complete set of arguments on the application of Kennedy to these cases. So what do you think we should do about the lack of a district court ruling on this significantly changed test when even Kennedy wasn't absolutely clear? I mean, we had to go on to Groff finally to have the final blow delivered to Lemon. What was the district court supposed to do, and what are we supposed to do with this? So I think in this case, for a few reasons, the Court should apply the waiver doctrine and conclude that the argument as to Kennedy and the application of the historical practices test is waived because it was not made below, despite there being the opportunity to make the argument below. I guess it was a significant change in the methodology, and I think we've seen this also in some other instances, too, of the test were to apply. We don't usually say that you waive arguments in terms of our particular types of cases one way. So is this a good fit? Is waiver a good fit for this? Sure. So this Court does regularly say that plaintiffs waive arguments in courts below when they've been given the opportunity to make an argument and chose not to make the argument for whatever reason. This would be a very different case if the district court opinion had come down before the Kennedy case was decided or just a few days before it was decided. But we filed our supplemental authority letter notifying the court of that decision a full seven months before the district court's opinion. About a month later, the plaintiffs filed a brief in which they dropped a footnote saying that they would address Kennedy in a future filing, and then they waited six months, never attempted to address Kennedy. And one point I wanted to make that hasn't been made yet is the district court explicitly relied on the plaintiffs' position on page 32 of the excerpts of record, where the Court writes this. Here, plaintiffs do not identify legal authority that would distinguish this case from the facts and law at issue in Amos, nor do plaintiffs dispute that the three-prong test announced in Lemon applies, again, despite being given multiple opportunities to dispute the argument that Lemon applies and actually endorsing that argument. So under these circumstances, we do think waiver of the argument under the historical practices test is appropriate, and that leaves only the Lemon test argument, which was made below, which they have not raised in their opening brief. Thus, that argument is also waived, and as a result, the entire Establishment Clause claim is waived on appeal.  Let me ask you this. Obviously, waiver is one approach, and you've articulated that. But is there enough evidence in the record that we have to permit us to decide the Establishment Clause case on the merits? We think that there is, and it's not really because of the evidence that's in the record. It's more based on a longstanding practice of cases dating back to the founding decided by the U.S. Supreme Court. It's law, basically. Yes, Your Honor. And I think the clearest enunciation of that law is what the U.S. Supreme Court said recently in the Carson v. Macon case, when the Court said, quote, it is clear that there is no historic and substantial tradition against aiding private religious schools. So the U.S. Supreme Court has made very clear what the history shows. So if this Court decided to reach the merits, that's a very easy analysis, and there's no reason to remand for any further development of the record. If I could turn very quickly, Your Honors, to the Equal Protection Clause, there has been this assertion made that they sufficiently preserved the argument that Congress was motivated by invidious intent. Of course, there's this one bald assertion that Congress was motivated by intent to discriminate based on sexual orientation. That was in the complaint. But what this Court and the U.S. Supreme Court both have said, this Court in Moss, the U.S. Supreme Court in the Iqbal case, is that such allegations of this bare intent to discriminate, quote, are not to be discounted because they're unrealistic or nonsensical, but rather because they do nothing more than state a legal conclusion, even if that conclusion is cast in the form of a factual allegation. So that bare allegation of discriminatory intent is not enough to survive a motion to dismiss, and so there's no need to remand for further factual development on that point. I see that my — I've got six seconds remaining. I'm happy to answer any further questions the Court might have for me. Otherwise, we would ask the Court to affirm. Thank you very much. Very well. Mr. — did you say it — Sherr, is that correct? That's correct, Your Honor. Very well. Please proceed. Gene Sherr, representing the Council for Christian Colleges and Universities. I think one easy way to resolve this case is simply to affirm Judge Aiken's finding that amendment would be futile. And I'd like to offer three reasons for that, but before I do that, I'd like to respond to Judge Johnstone's questions about how the exemption actually applies. Thank you. I was about to ask. I've represented a number of colleges in interactions with the Department of Education, and the reality is that the Department does not apply that exemption on a blanket basis. And the key word in the exemption itself is it provides the exemption if the application of this subsection would not be consistent with the religious tenets of such organizations. Now, that leaves the possibility that some applications will be inconsistent, but other applications of the law would not be inconsistent. And that's the way the Department interprets that. So it does not grant blanket applications. Is there any guidance we could — do you have a cite for that, other than your own experience? I'm afraid I have to rely on my own experience, Your Honor. So let me offer three reasons why Judge Aiken was correct in determining that amendment would be futile. First of all, if we back up for a minute and think about the end of the chess game here, plaintiffs are essentially arguing establishment clause and equal protection. Obviously, any decision that invalidates the Title IX exemption is going to go to the Supreme Court. And does anybody really think that the Supreme Court that just rejected the establishment clause argument in the Kennedy case and has rejected establishment clause arguments in case after case after case over the last 30 or 40 years is now going to sustain an establishment clause challenge to this provision passed by the people's representatives over 50 years ago? We're really good in the Ninth Circuit in guessing what the Supreme Court is going to   And same with respect to the — with respect to the plaintiff's equal protection claim. I mean, does anybody really think that the Supreme Court in Bostock that went out of its way, the majority — both the majority and the — and the dissent, the majority went out of its way to make clear that it's — that although Bostock was a sea change in how people understood Title VII, and they may reach the same decision with respect to Title IX, the court went out of its way to make clear that religious liberty still has to be protected in that new world. Let me ask you this. I get your point, but I think we would all agree that Judge Aiken was incorrect that Lemon was the law when she made the ruling. However, does that tie our hands in applying the correct standard under Kennedy if, based on the analysis that we have, we come to the same result? No, that certainly is another alternative to dealing with the establishment clause claim,  You could resolve it on the merits, and our brief and the other interveners' brief lays out a lot of historical information that you — that you could rely on. It's legal analysis as opposed to factual analysis. Yes. It's a legal — it's a legal question, for sure. I don't know whether you could speak to the APA claim a little bit, but based on your experience and the fact that now most of the plaintiffs have filed complaints, there are some troubling allegations of gender-motivated violence, other harassment. What are we supposed to do with that if we turn from — and what's the prospect of this if the facial as-applied challenge to this classification is not upheld? Tell us a little bit about, from your perspective, where those complaints should go from here. Well, first of all, Your Honor, those — I'm not aware of any — of any religious school that has claimed an exemption from Title IX with respect to gender-motivated violence or those kinds of things. I haven't seen that, and the plaintiffs didn't present any evidence that any school had ever sought such a — such an exemption. So I think that's really a red herring. So Title IX is fully applicable to those sorts of complaints as far as — as far as you know with respect to your clients? Yes, and as far as the — and as far as the record shows, somebody would have to — somebody would have to seek an exemption from that application of Title IX. What about — what about harassment short of violence? Same. Same, Your Honor. I'm not aware of anybody who sought an exemption under Title IX, any school that sought an exemption to protect their ability to have their students harass other students. The exemptions go to matters that are at the core of the faith commitments of those institutions, like — like adhering to the traditional religious understanding of marriage and gender matters and those sorts of things. They don't go beyond that, in my experience. Your time is up. Let me ask my colleagues additional questions. We could talk about this for a long time, but I'm afraid we're going to have to say an end here. Thank you. Yes, Your Honor. We've got a rebuttal by Ms. Renner. May it please the Court. So, the first item I'd like to address really briefly is the question of futility that was just raised. Certainly, the as-applied claim comes through the Department's regulations and the way that it has handled the exemption, so that goes far beyond talking about what Congress did in the 1970s. But specifically on the APA claim, the issue here is that the Department put a regulation in place that allows the exemption to be claimed after the fact, when a school has never before requested in writing. That deprives students of notice and the ability to know what rights they have. Counsel, let me — let me just ask you this on the ADA claims. As I look at the facts of the individual plaintiffs in this case, I didn't find any allegations that showed that any of these individual plaintiffs were harmed by the 2020 rule change. Did I miss something? There were not detailed facts pulled together in the operative complaint, but there are a number of facts that came through. There have to be to have standing causation, right? There would have to be some facts, general injury facts at least, and general injury was alleged, but there are many more facts that the plaintiffs could have added had they had the opportunity. So, for example, one of the plaintiffs, Kaylee Hargrove — I'm sorry, I'm running out of time, but I'll respond to your question. Then you can finish answering my question. Yes. So Kaylee Hargrove was a military veteran who was going to school on the GI Bill. Kaylee saw that her school was a Title IX school, believed that meant that she had legal protections. It was a reasonable inference because that school had never before sought an exemption and there was nothing on OCR's website about it. Kaylee didn't find out until after she had undergone a gender transition and was well on her way to getting her degree, when the school then told her, basically, you're going to be expelled if you don't leave. And Kaylee at the very last minute then had to transfer schools, was delayed in her time to graduation, and was very much affected. And given the timing of when Kaylee was at school and when those things were happening, Kaylee would have benefited from the prior rule had the department had that rule and enforced it. And vis-a-vis the 2020 rule change, when did all this happen? Before, after, during? What happened? So Kaylee applied to school in 2019 and started attending in 2020 and then was attending in 2020 and underwent this gender transition at the time that this rule change was happening. Throughout that entire period, there was no exemption sought. Is that alleged in the complaint? So those facts came out, for example, during the preliminary injunction hearing and was also alleged. So it's not in the complaint. That's what you would want to allege if we get a new grant. That's exactly the kind of facts that the plaintiffs could and would want to allege if they were given the opportunity to do so. Okay. Questions by my colleagues. I guess just one in terms of framing. Do you agree that an exemption is not a blanket exemption? Well, I think that the way in which the statute is written, it certainly seems that way. And in practice, how it has happened is that some schools have said, we would like an exemption from all of this long list of regulations under Title IX. And the Department of Education has said, okay. Some of them have asked for exemptions that are quite general. Some of them have asked for exemptions that's more specific. And so in many cases, that is, as a practical matter, how it is operating. But did you plead anything about the scope of the exemptions and whether those exemptions even apply to the harms that your clients had suffered? Those specific facts were not included in the plaintiff's APA claim as it was pled in the operative complaint. But again, there are many facts that came out, for example, you know, during the three days of testimony that was taken on their preliminary injunction hearing that the court expressly declined to even consider in her futility analysis. And that is why plaintiffs have taken the position that they should have at least been one shot at an amendment to correct any issues that the district court had identified. Other questions? Thank you very much. We appreciate all counsel's argument on this very interesting, challenging case. The case just argued is submitted and the court stands in recess or actually adjourned for the day.
judges: SMITH, BENNETT, JOHNSTONE